**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

DI AI,

§
§
§

Plaintiff,

§
§

C.A. No. 1:23 CV 1470

§

v.

§

**JURY TRIAL DEMANDED**

§
IAN TERRANCE GILLIS, SHOYEB        §
MOHAMMED AHMED, RASIER, LLC and    §
UBER TECHNOLOGIES, INC.,           §

Defendants.

## COMPLAINT

Plaintiff Di Ai ("Ai" or "Plaintiff") alleges against Defendants Ian Terrance Gillis

("Gillis"), Shoyeb Mohammed Ahmed ("Ahmed"), Rasier, LLC ("Rasier") and Uber

Technologies, Inc. ("UTI") (collectively, "Defendants") as follows:

## PARTIES

1.      At all times herein mentioned Plaintiff, DI AI, is, and at all relevant times herein

was, an individual residing in Cambridge, Middlesex County, Massachusetts.

2.      Plaintiff is informed and believes and thereon alleges that Defendant, IAN

TERRANCE GILLIS, is, and at all relevant times herein was, an individual residing in Perkasie,

Bucks County, Pennsyvania.

3.      Plaintiff is informed and believes and thereon alleges that Defendant, SHOYEB

MOHAMMED AHMED, is, and at all relevant times herein was, an individual residing in

Sterling, Loudoun County, Virginia.

1

4.    Plaintiff is informed and believes and thereon alleges that Defendant UBER TECHNOLOGIES, INC., is, and was at all times herein relevant was, a corporation, duly organized and existing under the laws of the State of Delaware with its principal place of business at 1515 Third Street in San Francisco, CA, and conducting business in the Commonwealth of Virginia through itself, its agents, and its alter egos.

5.    Plaintiff is informed and believes and thereon alleges that Defendant RASIER LLC is, and at all relevant times was, a Delaware Limited Liability Company that was a wholly owned subsidiary of Defendant UBER TECHNOLOGIES, INC. Rasier is a licensed transportation network company in the Commonwealth of Virginia, and a licensed private sedan business in the District. The Virginia Department of Motor Vehicles defines a transportation network company ("TNC") as an organization that "provides prearranged rides for compensation using a digital platform that connects passengers with drivers using a personal vehicle."[1] Defendant Rasier is, and at all relevant times were, authorized to conduct business and were doing business in the Commonwealth of Virginia and Fairfax County through itself, its agents, and its alter egos.

6.    Plaintiff is informed and believes and thereon alleges that Defendants UBER TECHNOLOGIES, INC. used Defendant RASIER LLC to obtain the necessary permit/license from the Virginia Department of Motor Vehicles to operate a business and commercial enterprise known to the public as Uber.

7.    Plaintiff is informed and believes and thereon alleges that at all times herein relevant, there was a unity of interest and operation between Defendants, UBER TECHNOLOGIES, INC.; RASIER LLC; and Shoyeb Mohammed Ahmed, and each of them

---

[1] https://www.dmv.virginia.gov/businesses/tnc/faq

(hereinafter collectively referred to as "UBER"), such that their separate and independent formation or classifications were a fiction and did not in fact exist, and that each was the alter-ego of the other, and that collectively they operated the transportation services business known to the public as Uber.

8.     Plaintiff is informed and believes and thereon alleges that at all times herein relevant, Defendants, SHOYEB MOHAMMED AHMED; UBER TECHNOLOGIES, INC.; and RASIER LLC were agents, ostensible agents, managing agents, servants, alter egos, employees, officers, directors, partners, trustees, co-trustees, successors in interest, co-venturers and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every Defendants, as aforesaid, when acting as a principal, were negligent in the selection and hiring, training, and supervision of each and every other Defendants as an agent, ostensible agent, managing agent, servant, alter ego, employee, officer, director, partner, trustee, co-trustee, successor in interest, co-venturer and/or joint venturer.

## GENERAL ALLEGATIONS

9.     Plaintiff hereby re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

10.     Plaintiff is informed and believes and thereon alleges that at all relevant times, UBER created a smartphone application ("app") to operate a transportation service. An individual needing a ride downloads the UBER app and then uses the app to make a transportation request. UBER automatically determines the user's location. UBER then matches the user with an UBER driver, who is also using an UBER app. UBER, through its app, automatically directs the driver to the user's location. UBER determines the route to the user's location so that the driver is taking the best route to the user. UBER also determines the route to

3

the user's final destination. UBER directs the driver, turn-by-turn, to the user's final destination. UBER logs and monitors GPS data for every trip so UBER knows the location of the user and driver at all times during the user's trip. After the ride, UBER calculates the fare owed by the user and charges the amount owed to the payment method linked to the user's UBER account. UBER pays the driver a share of the fare collected, taking a significant percentage cut from each fare as commission.

11.     UBER solicited and retained non-professional drivers to provide car rides that users request through the UBER app. A prospective driver for UBER applies online and uploads a driver's license, vehicle registration and proof of insurance. UBER has criteria or standards that drivers must meet before being hired by UBER. Drivers had to be at least 21 years of age, had to have at least one year of driving experience in the United States (three years if under the age of 23), and had to have a valid United States driver's license. UBER screened and evaluated each driver and performed a background check, as required by Va. Code Ann. § 46.2-2099.49 (2023), through a third party company. UBER also provided background and driving record checks from time to time to ensure the drivers remained eligible to drive.

12.     UBER used its drivers to perform work for which UBER was required to and obtained a TNC Certificate of Fitness from the Virginia Department of Motor Vehicles. In turn, the drivers effectively leased UBER's certificate and the ability to pick up users in exchange for giving UBER a percentage cut of each fare.

13.     Despite UBER's attempt to classify its drivers as independent contractors, a number of determinative facts, which existed as of the date of the subject collision alleged below and at all relevant times, showed that its drivers, including Defendant Ahmed, were employees of UBER. Those determinative facts included:

a. Drivers were an integrated part of UBER's transportation and logistics business, engaged in the core activity of UBER's usual business of transporting customers;

b. Drivers hired by UBER were not allowed to drive until UBER inspected and approved their vehicles. Only certain types of vehicles were allowed by UBER. Drivers were required to register their car with UBER. If a driver needed a car, UBER arranged for rental cars through rental companies that partnered with UBER and/or facilitated lease agreements with car companies for the driver.

c. Once approved, drivers were available to the public to provide transportation services, but only through the UBER app. Drivers were not allowed to pick up fares or solicit customers outside the UBER app.

d. Drivers were allowed to use their own phone subject to meeting the requirements for the app. UBER also provided phones to drivers for a certain charge or fee, and subject to certain terms and conditions regarding use. UBER reserved the right to terminate the drivers' use of the phone at any time.

e. When logged onto the UBER app, drivers were directed by UBER to display a visual identifier or signage on the vehicle so that the user associated the vehicle with UBER.

f. When logged onto the UBER app, the driver was in constant communication with UBER and UBER tracked the driver and user, including vehicle location, at all times.

g.  UBER required that its drivers maintained a certain level of satisfactory customer ratings. Drivers could be sanctioned if they did not maintain a certain level of customer ratings. Drivers could also be sanctioned if they refused too many ride requests or failed to provide services after acceptance of a ride request. UBER retained the right to terminate drivers at will by deactivating or otherwise restricting their access or use of the UBER app.

h.  Users were subject to "terms of use" when they signed up for the app. Only UBER, and not its drivers, retained the right to terminate the user's account for violating any of the terms.

i.  UBER set user fare prices without driver input. The drivers were not allowed to negotiate fares and had no control over the rates charged.

j.  Customers were obtained only through UBER. UBER retained control over customer contact information and credit card information. All monetary transactions, including payment of fares or cancellation fees (because of an untimely cancellation by the user) were handled by UBER.

k.  Drivers were unskilled workers who did not have substantial control over operational details. Drivers took all necessary directives from UBER.

l.  UBER's revenues did not depend on the distribution of its software but on the generation of rides by its drivers. UBER made money only if its drivers actually transported customers. Its drivers were active instruments of UBER's enterprise and provided an indispensable service; UBER could no more survive without drivers than it could without vehicles.

6

14.     UBER controlled various other aspects of the manner and means by which drivers offered rides through the UBER app. UBER required that drivers accept all ride requests when logged onto the app or face potential discipline. In addition, UBER required that its drivers i) dressed professionally, ii) send the customer who ordered a ride a text message when the driver was close to the pickup location, iii) keep radios either of or on soft music during the ride, iv) open doors for customers, v) pick up customers on the correct side of the street where the customers were waiting (described by UBER as door-to-door service), vi) are on time, vii) keep the car clean, vii) respect those who looked or thought differently, ix) refrain from commenting on someone's appearance, x) refrain from sex with a passenger, xi) refrain from touching or flirting with passengers, xii) drive the speed limit, xiii) do not text while driving, xiv) always use a phone mount, xv) take breaks when feeling tired, xvi) do not drink and drive, xvii) refrain from inappropriate or abusive language or gestures, and xviii) refrain from unwanted contact with users after the trip was over.

15.     UBER had specially trained incident response teams that were available around the clock to handle any urgent concerns by its users or drivers.

16.     The substance of what UBER actually did (and does) was to enable customers to book and receive rides. In short, UBER sold rides. UBER marketed itself to potential customers as a transportation company. UBER advertised that "Uber is your on-demand private driver" and that Uber was "Everyone's Private Driver" and in one of the cities it provided services described itself as the "best transportation service in San Francisco." When requesting a ride on a smartphone, UBER was identified as the ride provider.

17.     At all relevant times herein, and at the time of the subject collision, Defendant Ahmed was an approved driver and transportation provider who was operating a 2022 Toyota

RAV4 ("UBER Vehicle") while using, utilizing and logged onto the UBER app such that Defendant Ahmed was an agent, employee, servant, and/or partner of Defendants UTI and Rasier, and was at all relevant times acting within the course and scope of such agency, employment and partnership with the full knowledge, consent, authority, ratification, and permission of Defendants UTI and Rasier.

18.    Plaintiff is informed and believes and thereon alleges that at all times herein relevant, Defendants Ahmed, UTI and Rasier owned, leased, managed, entrusted, maintained, regulated, directed, operated and/or controlled the UBER Vehicle at the time of the subject collision.

19.    Plaintiff is informed and believes and thereon alleges that at all times herein relevant, Defendants Ahmed, UTI and Rasier were vicariously liable for the negligent torts of Defendant Ahmed.

## VENUE AND JURISDICTION

20.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity between the Plaintiff and Defendants.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

22.    On or about November 12, 2022 (hereafter referred herein as the "Collision Date"), Plaintiff, Di Ai, was a passenger on an active UBER ride in the UBER Vehicle that was driven, owned, operated, entrusted, leased, repaired, modified, maintained and/or controlled by Defendants, Ahmed; UTI; and Rasier; that at the time of the subject incident Defendant Ahmed

8

was an agent, employee, representative, member, servant, co-venturers and/or joint venturers of/with Defendants UTI and Rasier; that at the time of the subject incident Defendant Ahmed was transporting Plaintiff on an active Uber ride and acting within the course and scope of employment or agency with Defendants UTI and Rasier; that at the time of the subject incident UBER Vehicle was traveling westbound on Sunset Hills Road at or near 12192 Sunset Hills Road in Reston, Virginia (hereafter referred herein as the "Incident Location"); that at the time of the subject incident Defendant Gillis was traveling eastbound on Sunset Hills Road in a 2022 Chevrolet Equinox (hereafter referred herein as "SUV") heading in the opposite direction of the UBER Vehicle; that Defendants Ahmed, UTI, Rasier, and Gillis each so carelessly and negligently owned, operated, entrusted, leased, repaired, modified, maintained and/or controlled their vehicles so as to cause the UBER Vehicle and SUV to collide, thereby causing severe injuries and damages to Plaintiff (hereafter "Subject Collision").

23.    Plaintiff is uncertain and in doubt as to which Defendant caused which portion of Plaintiff Di Ai's aforementioned injuries and damages and from whom he is entitled to redress. Further, Plaintiff Di Ai joins all Defendants with the intent that the questions as to which, if any, of the Defendants is liable, and to what extent, may be determined between the parties. Plaintiff Di Ai is in doubt as to the extent of each Defendant's liability, and from whom he should seek redress, for the injuries and damages he had from November 12, 2022 and onward. If one or more Defendants are unable to fully satisfy any judgment, Plaintiff seeks to hold all Defendants jointly and severally liable under Va. Code Ann. § 8.01-443.

## COUNT I – NEGLIGENCE

24.    Plaintiff repeats, re-alleges and incorporates by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

25.     At all relevant times, Defendants Ahmed, UTI, Rasier, and Gillis had a duty to safely maintain and operate a motor vehicle and to abide by the laws of the Commonwealth of Virginia.

26.     On or about November 12, 2022, Defendants Ahmed and Gillis ("Defendant Drivers") breached said duty of care when Defendant Drivers carelessly, negligently, and unskillfully operated, managed or controlled, the vehicles they were operating on the Incident Location.

27.     As a direct and proximate result of Defendant Drivers' negligent operations of the vehicles, Defendant Drivers caused the Subject Collision, which resulted in severe and permanent injuries to Plaintiff and other losses, including but not limited to medical expenses, dental expenses, lost wages, emotional trauma, and pain and suffering.

28.     At the time of the Subject Collision, Defendant Drivers had exclusive control over their vehicles as the drivers.

29.     At the time of the Subject Collision, Defendant Drivers were negligent by, among other things, failing to: operate the vehicles in a safe manner, maintain a safe distance from each other's vehicle, travel at an appropriate rate of speed for the conditions, keep a safe and proper lookout while operating the vehicles, properly observe vehicles and traffic around them, and take evasive action to avoid collision.

30.     The Subject Collision was caused solely and exclusively by reason of Defendant Drivers and, by extension, Defendant UTI and Rasier's negligence and was caused in no manner whatsoever by any act or failure to act on the part of the Plaintiff, who was a passenger.

31.     As a direct and proximate result of Defendant Drivers' negligence, Plaintiff was seriously injured, to-wit, including, but not limited to a chipped front tooth, a missing front tooth,

back pain, neck pain, shoulder pain, bruises on knees and wrists, emotional trauma, pain and suffering, mental anguish, loss of consortium, and other serious and diverse injuries, some or all of which may be permanent in nature.

32.    As a direct and proximate result of Defendant Drivers' negligence, Plaintiff has undergone great physical pain and mental anguish, including multiple surgeries, and will continue to suffer for an indefinite time in the future, all to his great detriment and loss.

33.    As a further direct and proximate result of Defendant Drivers' negligence, Plaintiff was put to great expense for medicine, medical and dental attention, and nursing, and was for a long period of time unable to attend to Plaintiff's usual duties, all to his great detriment and loss.

34.    As a further direct and proximate result of Defendant Drivers' negligence, Plaintiff will for an indefinite time in the future be obliged to expend various and diverse sums of money in and about an effort to cure himself of the injuries he has suffered, all to his great detriment and loss.

35.    As a further direct and proximate result of Defendant Drivers' negligence, Plaintiff has suffered a loss and depreciation in his earnings and earning power, and will continue to suffer such loss and depreciation for an indefinite time in the future, all to his great detriment and loss.

**COUNT II – NEGLIGENT ENTRUSTMENT**

36.    Plaintiff repeats, realleges, and reiterates each and every paragraph as if laid out separately herein.

37.    At all relevant times, Defendant Ahmed was an employee and/or agent of Defendants UTI and Rasier ("Defendant Companies").

38.     At all relevant times, Defendant Ahmed was acting within the scope of his employment with Defendant Companies.

39.     At all relevant times, Defendant Ahmed was an incompetent and/or unfit person to operate a motor vehicle.

40.     At all relevant times, Defendant Ahmed's incompetence and/or unfitness was the cause of Plaintiff's injuries.

41.     Defendant Companies inspected and negligently and carelessly granted permission to Defendant Ahmed to use, drive, operate, utilize and/or borrow the UBER Vehicle.

42.     At all relevant times, Defendant Companies gave specific or general permission to Defendant Ahmed to operate the UBER Vehicle.

43.     At all relevant times, Defendant Companies had actual or constructive knowledge of Defendant Ahmed's incompetence and/or unfitness to operate the UBER Vehicle on or prior to the Subject Collision.

44.     As a result of Defendant Companies' negligent hiring and entrustment of Defendant Ahmed and the UBER Vehicle, the UBER Vehicle was involved in the Subject Collision, which resulted in permanent and severe injuries to Plaintiff and other losses.

45.     The Subject Collision was caused solely and exclusively by reason of the Defendants' negligence and was caused in no manner whatsoever by any act or failure to act on the part of Plaintiff.

46.     As a direct and proximate result of Defendant Companies' negligence, Plaintiff was seriously injured, to-wit, including, but not limited to a chipped front tooth, a missing front tooth, back pain, neck pain, shoulder pain, bruises on knees and wrists, emotional trauma, pain

and suffering, mental anguish, loss of consortium, and other serious and diverse injuries, some or all of which may be permanent in nature.

47.    As a direct and proximate result of Defendant Companies' negligence, Plaintiff has undergone great physical pain and mental anguish, and will continue to suffer for an indefinite time in the future, all to his great detriment and loss.

48.    As a further direct and proximate result of Defendant Companies' negligence, Plaintiff was put to great expense for medicine, medical and dental attention, and nursing, and was for a long period of time unable to attend to Plaintiff's usual duties, all to his great detriment and loss.

49.    As a further direct and proximate result of Defendant Companies' negligence, Plaintiff will for an indefinite time in the future be obliged to expend various and diverse sums of money in and about an effort to cure himself of the injuries he has suffered, all to his great detriment and loss.

50.    As a further direct and proximate result of Defendant Companies' negligence, Plaintiff has suffered a loss and depreciation in his earnings and earning power, and will continue to suffer such loss and depreciation for an indefinite time in the future, all to his great detriment and loss.

## COUNT III – NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION

51.    Plaintiff repeats, realleges, and reiterates each and every paragraph as if laid out separately herein.

52.    At all relevant times, Defendant Companies had a duty to exercise reasonable care in the hiring, training, retention, and supervision of its employees.

53.     On or about the Collision Date, Defendant Companies knew or should have known that its employee, Defendant Ahmed, lacked the proper skills and training and was unfit and unable to safely and properly operate the truck involved in the Subject Collision.

54.     By failing to take reasonable measures in properly hiring, training, retaining, and supervising its employees, including but not limited to Defendant Ahmed, Defendant Companies breached its duty of care to Plaintiff.

55.     As a direct and proximate result of Defendant Companies' negligent and/or grossly negligent hiring, training, retention, and supervision of Defendant Ahmed, Defendant Ahmed was enabled to cause the Subject Collision.

56.     The Subject Collision was caused solely and exclusively by reason of the Defendants' negligence and was caused in no manner whatsoever by any act or failure to act on the part of Plaintiff.

57.     As a direct and proximate result of Defendant Companies' negligence, Plaintiff was seriously injured, to-wit, including, but not limited to a chipped front tooth, a missing front tooth, back pain, neck pain, shoulder pain, bruises on knees and wrists, emotional trauma, pain and suffering, mental anguish, loss of consortium, and other serious and diverse injuries, some or all of which may be permanent in nature.

58.     As a direct and proximate result of Defendant Companies' negligence, Plaintiff has undergone great physical pain and mental anguish, and will continue to suffer for an indefinite time in the future, all to his great detriment and loss.

59.     As a further direct and proximate result of Defendant Companies' negligence, Plaintiff was put to great expense for medicine, medical and dental attention, and nursing, and

was for a long period of time unable to attend to Plaintiff's usual duties, all to his great detriment and loss.

60.     As a further direct and proximate result of Defendant Company's negligence, Plaintiff has suffered a loss and depreciation in his earnings and earning power, and will continue to suffer such loss and depreciation for an indefinite time in the future, all to his great detriment and loss.

## COUNT IV – RESPONDEAT SUPERIOR

61.     Plaintiff repeats, realleges, and reiterates each and every paragraph as if laid out separately herein.

62.     On or about the Collision Date, Defendant Companies had in its employ, agency, and/or service Defendant Ahmed.

63.     Under the doctrine of respondeat superior, all negligence and/or gross negligence committed by Defendant Companies' employees, agents, or servants is imputed to be the responsibility of Defendant Companies.

## COUNT V – RES IPSA LOQUITUR

64.     Plaintiff repeats, realleges, and reiterates each and every paragraph as if laid out separately herein.

65.     On or about the Collision Date, Defendant Drivers had exclusive possession and control of the vehicles which caused the Subject Collision.

66.     On or about the Collision Date, the weather was clear and the intersection of the collision was free of any obstacles or visual obstructions.

67.     On or about the Collision Date, both Defendant Drivers' vehicles' lights were operational and turned on.

68.     On or about the Collision Date, the traffic light at the intersection of the collision was operational and functioning normally.

69.     A head-on collision between two vehicles under these circumstances does not ordinarily occur if due care is used.

70.     As a passenger, Plaintiff is uncertain and in doubt as to which Defendant caused which portion of Plaintiff Di Ai's aforementioned injuries and damages and from whom he is entitled to redress.

71.     Under the doctrine of *res ipsa loquitur*, Defendant Drivers carelessly, negligently, and unskillfully operated, managed and/or controlled their respective vehicles, causing the Subject Collision and Plaintiff's aforementioned injuries and damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against and damages from Defendant Drivers and Companies herein in an amount to be determined at a trial of this action that will fairly and reasonably compensate Plaintiff for all his injuries, in excess of $75,000.00, including but not limited to medical and dental expenses, lost wages, pain and suffering, and emotional trauma, plus interest, costs, and attorney's fees as provided by law, and such other and further relief that this Court may deem just and proper under the circumstances.

### JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all of the claims so triable.

Dated: October 23, 2023

Respectfully Submitted,

The Plaintiff,

16

Di Ai
10 Holyoke Pl #527
Cambridge, MA 02138
Telephone: (857) 972-3095
diai21@gmail.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
_Alexandria_ **DIVISION**

$D; A;$

Plaintiff(s),

v.

Ian Terrance Gillis, Shoyeb Mohammed Ahmed, Rasier, LLC and Uber Technologies, Inc.,

Defendant(s).

Civil Action Number: 1:23CV1470

OCT 27 2023

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** _Complaint_ .
(**Title of Document**)

_D; A;_
Name of *Pro Se* Party (Print or Type)

Signature of *Pro Se* Party

Executed on: 10/23/2023 (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
(**Title of Document**)

(Name of Attorney)

(Address of Attorney)

(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

(Name of *Pro Se* Party (Print or Type)

Signature of *Pro Se* Party

Executed on: _____ (Date)